# OMNIBUS AGREEMENT

This OMNIBUS AGREEMENT (this "***Omnibus Agreement***") is made on this 16th day of April, 2023 (the "***Effective Date***"), by and among:

(i) Siddharth Jawahar ("***Jawahar***"), SJ Investment Holdings, LLC, a Texas limited liability company ("***SJ Holdings***"), Swiftarc Holdings, LLC, a Texas limited liability company ("***Swiftarc Holdings***"), Swiftarc Capital, LLC, a Delaware limited liability company ("***Swiftarc Capital***"), Swiftarc, LLC, a Texas limited liability company ("***Swiftarc LLC***"), Swiftarc Ventures, LLC, a Texas limited liability company ("***Swiftarc Ventures***"), Swiftarc Beauty Fund GP, LLC, a Delaware limited liability company ("***Beauty GP***"), Swiftarc Venture Labs Fund GP, LLC, a Delaware limited liability company ("***SV Labs GP***"), Swiftarc Telehealth Labs Fund GP, LLC, a Delaware limited liability company ("***Telehealth GP***"), Order of Magnitude Ventures, LLC, a Texas limited liability company ("***OOM***") (collectively, "***Swiftarc***");

(ii) Swiftarc Beauty Fund, LP, a Delaware limited partnership ("***Beauty LP***"), Swiftarc Telehealth Labs Fund, LP, a Delaware limited partnership ("***Telehealth LP***"), and Swiftarc Venture Labs Fund, LP, a Delaware limited partnership ("***SV Labs LP***") (collectively, the "***Funds***");

(iii) Fred C. Goad, Jr. ("***Goad***"), Frank Krasovec ("***Krasovec***"), and Zohar Ziv ("***Ziv***") (collectively, the "***Investors***"); and

(iv) Relevance Capital Management, LLC, a Tennessee limited liability company ("***RCM***"), Beauty Generations GP, LLC, a Delaware limited liability company (the "***New General Partner***") (collectively, "***New Management***").

## RECITALS

WHEREAS, Jawahar owns, directly and indirectly, each of the entities constituting Swiftarc, which, in turn, currently owns portions of and controls the Funds;

WHEREAS, the Investors hold various interests in Swiftarc and the Funds;

WHEREAS, Beauty LP has invested in three portfolio assets, Thirteen Lune Inc. ("***Thirteen Lune***"), Alleyoop, Inc., and The Pause Group, Inc.;

WHEREAS, in line with discussions held and to promote optimal management of Beauty LP going forward, the parties desire to enter into this Omnibus Agreement in order to transfer management responsibilities of Beauty GP to the New Management, modify the Investors' equity and debt interests in the Funds, and complete various related transactions (the "***Transactions***");

WHEREAS, on December 7, 2021, the United States District Court for the District of Arizona entered a default judgment against Jawahar, Swiftarc Capital LLC, and Swiftarc Fund LP related to delinquent redemption payments and rewarded the plaintiffs approximately $5,000,000 in principal repayment and associated interest payments related to certain allegations (the "***Arizona Judgment***");

WHEREAS, on June 7, 2022, the Texas State Securities Board entered a Disciplinary Order against Jawahar and Swiftarc Capital finding a breach of fiduciary duties and Swiftarc Capital's registration as an investment adviser was revoked (the "***Texas Order***"); and

WHEREAS, by entering into this Omnibus Agreement, and among other things, it is the intent of the parties to transfer:

(i) all of Goad's Class B units and all other interests held in Swiftarc Capital to Jawahar or his designee,

(ii) all of Krasovec's Class B Units in SV Labs GP (equal to approximately 20% of the equity of SV Labs GP) to Jawahar and in exchange, Krasovec shall receive 20% of the applicable carried interest otherwise payable in respect of existing portfolio investments currently held in SV Labs LP, and

(iii) all of Ziv's Class B Units in SV Labs GP (equal to approximately 12% of the equity of SV Labs GP) to Jawahar and in exchange, Ziv shall receive 12% of the applicable carried interest otherwise payable in respect of existing portfolio investments currently held in SV Labs LP.

As a result of these transfers, and for purposes of clarity, the parties hereby acknowledge and agree that the Investors will not retain direct ownership interests or units associated with Swiftarc or Jawahar (or any affiliates or subsidiaries thereof), apart from any ownership interests retained by Investors (or their affiliates) in their capacity as limited partners of Swiftarc Fund, LP, a Delaware limited partnership, or as expressly specified herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the covenants and conditions herein set forth, the sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. Recitals Incorporated. The above recitals are hereby incorporated in and made a part of this Omnibus Agreement as fully as if set forth verbatim herein. By signing this Omnibus Agreement, the parties acknowledge and agree that the recitals are true and correct and the parties are bound thereby. Further, the parties acknowledge reading, understanding and agreeing to all of these recitals.

2. Management Transfer.

(a) By execution hereof, on and as of the Effective Date, Swiftarc and Beauty GP agree to transfer all of Beauty LP's general partner interest in the Beauty LP to the New General Partner and the New General Partner agrees to assume the Beauty LP general partnership interest (the "***Beauty GP Transfer***").

(b) On and as of the Effective Date, Swiftarc Ventures agrees to transfer its interest as the Investment Manager of Beauty LP (collectively with the Beauty GP Transfer, the "***Beauty Management Transfer***").

(c) The Beauty Management Transfer will be effected in accordance with the operative provisions of the Amended and Restated Limited Partnership Agreement of Beauty LP dated as of September 29, 2021 (the "***Beauty LPA***"), including by way of resignation, withdrawal or assignment as appropriate. After the Beauty Management Transfer, one hundred percent (100%) of the management fees, other fees, and carried interest otherwise payable by Beauty LP shall be paid or payable to entities as directed by the Investors, and such amounts shall not be paid or payable to Swiftarc.

(d) Swiftarc and the New General Partner agree to be bound by Sections 4.12 and 4.13 of the Beauty LPA, including, but not limited to Swiftarc's full and continued liability for actions taken as general partner prior to the Effective Date.

(e) Each party shall use its best efforts to obtain any requisite consents from the limited partners of Beauty LP to enable the Beauty Management Transfer; *provided*, *that* if consent is not obtained from all limited partners of Beauty LP within thirty (30) days after the Effective Date, unless otherwise waived by both an authorized representative of RCM and an authorized representative of the Investors in writing, the Investors' covenants under Section 13(d) shall be null and void. In connection with the Beauty Management Transfer, Swiftarc will exit Beauty GP and Beauty LP entirely with no remaining economic, ownership or other interest in either entity, *provided that* OOM shall maintain its limited partnership interest in Beauty LP. All support infrastructure for Beauty LP shall be transitioned to New Management such that there will be no shared services or other intercompany or service relationships between Beauty LP and Swiftarc following the Beauty Management Transfer.

(f) Upon completion of the Beauty Management Transfer, Swiftarc shall use its best efforts to cause Beauty GP to promptly cease operations and dissolve.

(g) The parties shall use their reasonable best efforts to implement and obtain approval for Beauty LP to change its name to "Beauty Generations Fund I LP" on or within a reasonable after the Effective Date.

(h) New Management or one of their affiliates shall have the right to enter into an independent contractor agreement with Swiftarc employee, Fabian Urquijo ("***Urquijo***"), to assist New Management with the Beauty Management Transfer transition and to assist with obtaining additional limited partner capital commitments as directed by New Management. Urquijo shall initially be engaged for three months at a pro-rated annual base compensation of $200,000 and, in the sole discretion of New Management, may continue as an independent contractor on a month-to-month basis for up to twelve (12) months following the Effective Date. Thereafter, New Management may continue its independent contractor relationship or offer an employment relationship to Urquijo in its sole discretion.

(i) Jawahar and Swiftarc agree, and Urquijo shall agree in connection with his engagement as an independent contractor, that each will not represent or imply (whether by affirmative statement, act, omission or otherwise) that Jawahar or Swiftarc are affiliates, agents or representatives of Beauty LP, the Investors or New Management.

3. Order of Magnitude Side Letter. On or before the Effective Date, Beauty LP, Swiftarc and New Management will amend and restate all side letters with OOM related to its investment in Beauty LP to (i) disclose the ownership structure of OOM, (ii) remove language regarding "last-money in" and the applicable $10 million funds-raised trigger, and (iii) add an obligation for OOM to fund its remaining $200,000 balance no sooner than December 31, 2024 and no later than December 31, 2025, *provided that* if the balance is not funded by December 31, 2025, the applicable obligation (and associated right to invest) shall terminate as to any remaining outstanding balance.

4. Beauty Note. The parties shall exchange that certain intercompany loan by Swiftarc Ventures in favor of Beauty LP in the amount of $610,000 (the "***Intercompany Loan***") with a new note by Swiftarc Holdings, Swiftarc LLC, SJ Holdings and Jawahar, on a joint and several basis, in favor of Beauty LP in the amount of $610,000, plus interest at a rate of 3.5% per annum for the first twelve (12) months increasing to 7.0% per annum for the remaining twelve (12) months (the "***Beauty Note***"). Fifty percent (50%) of Beauty Note shall be due and payable after eighteen (18) months with the balance due and payable at twenty-four (24) months. Subject to the preceding sentence, Swiftarc may make interest-only payments until the applicable maturity dates of each such note, but shall have the right to pre-pay either note in whole or in part at its discretion. For the avoidance of doubt, the Beauty Note shall become an asset of Beauty LP and shall replace the existing Intercompany Loan. The parties acknowledge and agree that no more debt shall be borrowed under the existing Intercompany Loan.

5. New General Partner Note. In exchange for redeeming Andrew Barth's ("***Barth***") $500,000 investment in Beauty GP, Swiftarc Holdings, Swiftarc LLC, and SJ Holdings on a joint and several basis, shall deliver a promissory note in favor of the New General Partner in the amount of $250,000, plus interest at a rate of 3.5% per annum for the first twelve (12) months increasing to 7.0% per annum for the remaining twelve (12) months (the "***New GP Note***"). The parties shall use reasonable efforts to conform the New GP Note to the terms of the Beauty Note and obtain a representation from Barth that the New GP Note represents full redemption of Barth's equity interests in Beauty GP.

6. Goad Interest in Swiftarc Capital. Goad shall transfer all of his Class B units and all other interests held in Swiftarc Capital to Jawahar or his designee.

7. Krasovec Carried Interest Rights. Krasovec shall transfer all of his Class B Units in SV Labs GP (equal to approximately 20% of the equity of SV Labs GP) to Jawahar and in exchange, Krasovec shall receive 20% of the applicable carried interest otherwise payable in respect of existing portfolio investments currently held in SV Labs LP; *provided, that*, if SV Labs LP increases its investment in any existing portfolio company, that increased investment shall not be included as a portfolio investment subject to this provision unless the primary purpose of such increased investment is to reduce the amount due Krasovec pursuant to this provision. Jawahar and Swiftarc shall take no action and make no omission that would intentionally reduce or otherwise encumber the amounts payable to Krasovec hereunder. Jawahar will, and will direct SV Labs GP and SV Labs LP to, take such action as reasonably requested by Krasovec to implement such favorable structures and agreements to minimize the tax impact on Krasovec and otherwise comply with laws and regulations with respect to the exchange contemplated herein and his holding of the rights to carried interest.

8. Ziv Carried Interest Rights. Ziv shall transfer all of his Class B Units in SV Labs GP (equal to approximately 12% of the equity of SV Labs GP) to Jawahar and in exchange, Ziv shall receive 12% of the applicable carried interest otherwise payable in respect of existing portfolio investments currently held in SV Labs LP; *provided, that*, if SV Labs LP increases its investment in any existing portfolio company, that increased investment shall not be included as a portfolio investment subject to this provision unless the primary purpose of such increased investment is to reduce the amount due Ziv pursuant to this provision. Jawahar and Swiftarc shall take no action and make no omission that would intentionally reduce or otherwise encumber the amounts payable to Ziv hereunder. Jawahar will, and will direct SV Labs GP and SV Labs LP to, take such action as reasonably requested by Ziv to implement such favorable structures and agreements to minimize the tax impact on Ziv and otherwise comply with laws and regulations with respect to the exchange contemplated herein and his holding of the rights to carried interest.

9. Telehealth LP. Swiftarc and New Management shall provide prompt notice to the limited partners of Telehealth LP of the portions of the Transactions relevant to such limited partners, including the exit of the Investors from all Swiftarc ownership. Following such notice, Swiftarc shall provide the opportunity for a reasonable time for the Telehealth LP limited partners to terminate the remainder of their unfunded capital commitments in Telehealth LP.

10. Communication Plan. The parties shall cooperate in good faith to develop a communication plan regarding the Investors separation from Swiftarc. The messaging shall then be communicated to limited partners of the Funds, and any other investors who may have invested in Swiftarc or the Funds based on the Investors' affiliation with Swiftarc, and will disclose that certain Texas Securities Commissioner's Disciplinary Order against Swiftarc and that certain default judgment against Swiftarc in the United States District Court for the District of Arizona.

11. Thirteen Lune. Promptly after Effective Date, RCM shall loan Beauty LP $625,000 secured by the Thirteen Lune stock held by Beauty LP (the "***Thirteen Lune Note***"). The remainder of the Thirteen Lune obligation shall be funded by Swiftarc pursuant to an agreement between Swiftarc and Thirteen Lune.

12. Additional Beauty Investors.

(a) The parties will cooperate in good faith to introduce RCM to all potential investors who have verbally committed to invest in Beauty LP but have not yet committed in writing.

(b) Swiftarc shall use best commercial efforts to convert verbal limited partner capital commitments to signed and funded capital commitments sufficient to satisfy the outstanding obligation to Thirteen Lune and Beauty LP shall use the capital called from such commitments to satisfy its unfunded obligation to Thirteen Lune, or repay the Thirteen Lune Note as applicable. Any overage due to additional funded capital commitments shall be held on account as a cash asset of Beauty LP.

(c) Beauty LP and the other parties hereto shall extend the base offering period, investment period and term of Beauty LP for an additional two years each by preparing an

amendment to the Beauty LPA and using their reasonable best efforts to obtain the necessary approvals to implement such amendment.

(d) Other than the use of the Swiftarc name and related intellectual property, Beauty LP is the sole and exclusive legal and beneficial owner of all right, title, and interest in and to any Beauty LP intellectual property, and has the valid and enforceable right to use all other intellectual property used in or necessary for the conduct of the business of the Beauty LP as currently conducted and as proposed to be conducted, in each case, free and clear of all liens. Swiftarc shall use best commercial efforts to transfer all Beauty LP intellectual property (other than related to the name) to New Management as applicable.

13. Representations, Warranties and Covenants.

(a) Each party and each person signing this Omnibus Agreement on behalf of a party represents and warrants to the others that (a) this Omnibus Agreement has been duly authorized, executed and delivered by such party, (b) that it has the power to enter into this Omnibus Agreement and (c) that this Omnibus Agreement constitutes a legal, valid, and binding obligation of each party enforceable against each party in accordance with its terms.

(b) The execution, delivery, and performance by each party to this Omnibus Agreement, and the consummation of the transactions contemplated hereby, do not and will not: (i) conflict with or result in a violation or breach of any provision of any law or governmental order applicable to the parties hereto; (ii) except as set forth in clause (iii) below, require the consent, notice, or other action by any individual, entity, or organization under any contract or agreement to which the parties hereto are a party; or (iii) to the extent the consent, notice, or other action by any individual, entity, or organization under any contract or agreement to which the parties hereto are a party is required, such consent has been obtained, such notice and other action has been taken or has been disclosed in this Omnibus Agreement, as applicable. No consent, approval, permit, governmental order, declaration or filing with, or notice to, any governmental authority is required by or with respect to the parties in connection with the execution and delivery of this Omnibus Agreement and the consummation of the transactions contemplated hereby.

(c) Jawahar and Swiftarc have complied, and are now complying, with all applicable federal, state and local laws and regulations applicable to ownership and use of Swiftarc's assets and contractual arrangements. Except for the Arizona Judgment and Texas Order, there are no Actions pending or, to Jawahar's knowledge, threatened (a) against or by Swiftarc affecting any of its assets or contractual arrangements (or by or against Jawahar or any of his affiliates relating to Swiftarc); or (b) against or by Swiftarc, Jawahar or any of their affiliates that challenges or seeks to prevent, enjoin or otherwise delay the Transactions or any other actions contemplated by this Omnibus Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action. Except for the Arizona Judgment and Texas Order, there are no outstanding governmental orders and no unsatisfied judgments, penalties or awards against or affecting Swiftarc or any of its assets or contractual arrangements. Jawahar and Swiftarc are in compliance with the terms of the Arizona Judgment and Texas Order. No event has

occurred or circumstances exist that may constitute or result in (with or without notice or lapse of time) a violation of any such governmental order, the Arizona Judgment or the Texas Order. "***Action***" means any claim, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of any nature, civil, criminal, administrative, regulatory or otherwise, whether at law or in equity.

(d) Subject to Section 2(e), each of the Investors agree not to sue Swiftarc in connection with investments made by the applicable individual in Swiftarc; *provided that* in all respects that no liability whatsoever is alleged or imposed on any of them, their affiliates or associates as a result of any association or business activity with Jawahar personally or Swiftarc. Should any of them, their affiliates, or associates be sued or forced to incur any legal or other third party expense as a result of Jawahar or any Swiftarc entity or activity, then all of their claims (and any associated statutes of limitation) against Jawahar and Swiftarc shall have been deemed tolled and reinstated *in toto*. For the avoidance of doubt, the foregoing shall not be deemed a release of claims but rather a covenant not to sue subject to the conditions stated. The Investors and their associates, affiliates and professional advisors (including, without limitation, New Management, their principals and affiliates) shall be released from all liability associated in any way with Swiftarc. Jawahar and Swiftarc shall indemnify the Investors on a joint and several basis for all claims (including direct and third party claims) arising from agreements with, and ownership of, any Swiftarc entity.

(e) The parties hereby waive any notice requirements or transfer restrictions contained in any applicable agreement or applicable law regarding the Transactions and any other transfers or ancillary actions contemplated in this Omnibus Agreement.

(f) Neither Jawahar nor Swiftarc nor any of their advisors or affiliates shall make any reference to the Investors or their affiliates as partners, associates, investors, sponsors, supporters, advisors, or otherwise, or in any way suggest or imply that the Investors support Jawahar, Swiftarc, or any of their businesses or business activities.

(g) On or prior to the Effective Date, Swiftarc shall provide documentation (in a form satisfactory to the Investors and their legal and tax advisors) evidencing the cash investments made in the Swiftarc entities, which the parties agree when accounting for lack of control, marketability, and the outstanding Arizona judgement against the entity, has an estimated total value of not more than $1 million in the aggregate, *provided, however*, that the parties acknowledge and agree that the total value may have some value fluctuation based on market conditions and events. Jawahar represents and warrants that such documentation and representations are true and correct as of the date given and as of the date hereof.

(h) Swiftarc and the Funds, and each of their subsidiaries have complied with all applicable laws and all internal or publicly posted policies, notices, and statements concerning the collection, use, processing, storage, transfer, and security of personal information in the conduct of the Funds' businesses.

(i) *Exculpation*. Swiftarc (collectively with any of their successors, assigns, heirs, executors, administrators, and personal representatives, for purposes of this section, the "***Transferor Releasor***") releases Beauty LP, the Investors and New Management and their successors and assigns (for purposes of this section, "***Exculpated Party***") from all claims that the Transferor Releasor ever had, now has or may have against an Exculpated Party for, upon, or by reason of any matter, cause, or thing whatsoever whether known or unknown which have existed, or do presently exist, or may exist relating to the Funds or their activities, assets, or liabilities prior to the Effective Date.

(j) *Indemnification*. Jawahar and each Swiftarc entity agree that they shall, jointly and severally, defend, indemnify and hold harmless the Investors, New Management, the Funds and their officers, directors, agents and employees, and their respective successors and assigns (collectively "***Indemnified Party***"), against and from any and all adverse consequences incurred by or asserted against any of them and relating to, resulting from or arising out of:

i) any breach of, or inaccuracy in, any representation or warranty of Jawahar or Swiftarc in this Omnibus Agreement or any inaccuracy in any certificate delivered by or on behalf of Jawahar or Swiftarc;

ii) any breach of any covenant of Jawahar or Swiftarc contained in this Omnibus Agreement;

iii) any indebtedness or transaction expenses outstanding as of the Effective Date, to the extent such amount is not expressly part of the Transactions as set forth in this Omnibus Agreement; and

iv) all liabilities arising out of the ownership and operation of the Swiftarc entities and Funds prior to the Effective Date, in each case, to the extent such amount is not expressly part of the Transactions as set forth in this Omnibus Agreement.

(k) *Organizational Structure*. As of the effectiveness of the transactions contemplated by this Omnibus Agreement and the other documents and agreements contemplated hereby, the parties hereby acknowledge and agree that the organizational chart attached hereto as **Exhibit A** truly and accurately reflects the ownership structure of Swiftarc and the Funds, as of the Effective Date.

(l) *Confirmation of Certain Material Facts*. As of the Effective Date of this Omnibus Agreement, Swiftarc and Jawahar acknowledge and agree that the following is true and accurate:

i) As of the Effective Date, Telehealth LP has called $1,450,000 in capital out of $9,150,000 in executed capital commitments;

ii) As of the Effective Date, Beauty LP has called $5,275,000 in capital out of $5,725,000 in executed capital commitments;

iii) As of the Effective Date, Beauty LP has cumulative retained earnings of $197,000;

iv) As of the Effective Date, all funds previously reported to investors as being used to purchase stock of Phillip Morris (Pakistan) Limited, including related expenses, have been deployed purchasing such stock and neither Swiftarc nor Jawahar have misappropriated, misplaced, or otherwise not accounted for any funds identified for such use;

v) As of the Effective Date, Beauty GP received an investment from Barth in the amount of $500,000 and has loaned Swiftarc Ventures $336,000; and

vi) The organizational chart, attached hereto as **Exhibit B,** relating to the Swiftarc ownership structure was true and correct as of March 8, 2023 through the Effective Date of this Omnibus Agreement.

(m) *Assigned Contracts and Rights*. Each contract and right assigned pursuant to the Transactions or otherwise in connection with this Omnibus Agreement (the "***Assigned Contracts***") is valid and binding on Jawahar or Swiftarc, as applicable, in accordance with its terms and is in full force and effect. None of Jawahar or Swiftarc or, to Jawahar's knowledge, any other party thereto is in breach of or default under (or is alleged to be in breach of or default under), or has provided or received any notice of any intention to terminate, any Assigned Contract. No event or circumstance has occurred that, with or without notice or lapse of time or both, would constitute an event of default under any Assigned Contract or result in a termination thereof or would cause or permit the acceleration or other changes of any right or obligation or the loss of benefit thereunder. Complete and correct copies of each Assigned Contract have been made available to the Investors and New Management. There are no disputes pending or threatened under any Assigned Contract.

(n) *Full Disclosure*. No representation or warranty by Jawahar or Swiftarc in this Omnibus Agreement or any certificate or other document furnished or to be furnished by Jawahar or Swiftarc pursuant to this Omnibus Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

14. <u>Competing Fund</u>. During the period beginning on the Effective Date and ending on the fifth (5th) anniversary of the Effective Date (the "***Non-Compete Period***"), Jawahar will not, and will cause Swiftarc and its or their respective subsidiaries and affiliates not to, directly or indirectly, for its own account or on behalf of or together with any other person, engage in, participate in, own, manage, control or participate in the ownership, management or control of a private equity fund with a focus on beauty-related investments, including, but not limited to, by facilitating or otherwise participating in the raising of capital for a beauty fund.

15. <u>Tail Coverage</u>. Unless waived by both an authorized representative of RCM and an authorized representative of the Investors in writing, within fifteen (15) days of the Effective Date, Swiftarc shall obtain and fully pay for "tail" insurance policies in favor of the Investors to

provide coverage for Jawahar and Swiftarc professional acts with respect to claims arising out of or relating to events which occurred before or at the Effective Date (including in connection with the Transactions) with a claims period of at least six (6) years from the Effective Date, a minimum coverage amount of $5 million and such other terms and conditions satisfactory to the Investors and New Management (the "***Tail Policy***"). During the term of the Tail Policy, Jawahar and Swiftarc shall not (and shall not cause any person to) take any action following the Effective Date to cause the Tail Policy to be cancelled or any provision therein to be amended or waived. Neither the Investors, New Management nor any affiliate thereof shall be obligated to pay any premiums or other amounts in respect of such Tail Policy.

16. Counsel to New Management. Morris, Manning & Martin, LLP has been selected by RCM to serve as legal counsel to New Management (in such capacity, "***RCM Counsel***"). Each party acknowledges that RCM Counsel does not represent any party in the absence of a clear and explicit agreement to such effect between such party and RCM Counsel, and that in the absence of any such agreement RCM Counsel shall owe no duties directly to a party. The parties further agree that none of this Omnibus Agreement or the Transactions contemplated hereby, or RCM Counsel's representation of New Management (whether now or in the future) shall be deemed or is intended to create an attorney/client or other relationship between RCM Counsel and any other party. Each of Jawahar, Swiftarc and the Investors have retained on their behalf such legal counsel and advisors necessary to represent and evaluate such party's rights and obligations under this Omnibus Agreement and the Transactions.

17. Survival. The representations and warranties of a party hereto shall survive the consummation of the Transactions for a period of sixty (60) months after the Effective Date. If, prior to the expiration of any of the survival periods, a claimant makes a claim, the survival period with respect to that claim shall be extended until the claim shall have been satisfied or otherwise resolved.

18. Inspection Rights. Swiftarc and the Funds shall permit each of the Investors and New Management to examine the Funds' books of account and records and to discuss the Funds' affairs, finances and accounts with its general partners and officers, all at such reasonable times as may be requested by such person.

19. Further Assurances. The parties hereto will make, execute, and deliver such documents and undertake such other and further acts as may be reasonably necessary to complete the transaction contemplated herein. Furthermore, upon the consummation of the Transactions, Jawahar and Swiftarc hereby appoint New Management as their attorney-in-fact to execute and deliver any and all such assignments, bills of sales, instruments, papers, deeds, and to perform all other acts which New Management deems appropriate for the purpose of effecting the Transactions. The power herein conferred upon New Management is coupled with an interest and is irrevocable.

20. Governing Law. This Omnibus Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to principles of conflicts of laws that would require the application of the laws of any other jurisdiction.

21. Jurisdiction. The parties hereto agree that any proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Omnibus Agreement or the transactions contemplated hereby shall be brought in any federal or state court located in the State of Tennessee, and each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such proceeding in any such court or that any such proceeding brought in any such court has been brought in an inconvenient forum. Process in any such proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of any such court.

22. WAIVER OF JURY TRIAL. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS OMNIBUS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

23. Expenses. Unless expressly set forth in another agreement of the parties and except as expressly set forth within this Omnibus Agreement, RCM, the Investors, and Swiftarc shall each be responsible for their respective costs and expenses (including the expenses of their respective counsel and advisors) incurred in connection with this Omnibus Agreement and the transactions contemplated herein, regardless of whether the parties consummate such transactions.

24. Interpretation. The parties acknowledge and confirm that each of their respective attorneys have participated jointly in the drafting, review, and revision of this Omnibus Agreement and that it has not been written solely by counsel for one party and that each party has had the benefit of its independent legal counsel's advice with respect to the terms and provisions hereof and its rights and obligations hereunder. Each party hereto, therefore, stipulates and agrees that the rule of construction to the effect that any ambiguities are to be or may be resolved against the drafting party shall not be employed in the interpretation of this Omnibus Agreement to favor any party against another and that no party shall have the benefit of any legal presumption or the detriment of any burden of proof by reason of any ambiguity or uncertain meaning contained in this Omnibus Agreement. Whenever the words "include," "includes," or "including" are used in this Omnibus Agreement, they shall be deemed to be followed by the words "without limitation," whether or not they are in fact followed by those words or words of like import.

25. Oral Agreements. This Omnibus Agreement supersedes any oral agreements that may have been made or entered into by or among any of the parties hereto or any of their respective subsidiaries relating to the matters contemplated hereby.

26. Enforceability. If any provision or clause of this Omnibus Agreement, or portion thereof, shall be held by any court or other tribunal of competent jurisdiction to be illegal, void or unenforceable in such jurisdiction, the remainder of such provisions shall not thereby be affected and shall be given full effect, without regard to the invalid portion.

27. Amendment to this Omnibus Agreement; No Waiver. Any amendment or waiver must be in a writing signed by duly authorized representatives of the parties hereto and stating the intent of the parties to amend or waive any provision of this Omnibus Agreement. The execution

and delivery of this Omnibus Agreement shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of any party thereto.

28. Headings. The section headings contained in this Omnibus Agreement are for convenience only and shall not affect the construction or interpretation of this Omnibus Agreement.

29. Counterparts; Electronic Delivery. This Omnibus Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall be one and the same instrument. Delivery of an executed counterpart of a signature page to this Omnibus Agreement by facsimile or as a PDF or similar attachment to an electronic communication shall have the same effect as delivery of a manually executed counterpart to this Omnibus Agreement.

[*Signature pages follow*]

IN WITNESS WHEREOF, the undersigned parties have executed and delivered this Omnibus Agreement as of the date first written above.

**SWIFTARC**

DocuSigned by:
Sid Jawahar
BB217A15B3AF44B...
SIDDHARTH JAWAHAR

SJ INVESTMENT HOLDINGS, LLC, a Texas limited liability company

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Managing Member

SWIFTARC HOLDINGS, LLC, a Texas limited liability company

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Managing Member

SWIFTARC CAPITAL, LLC

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Managing Member

SWIFTARC, LLC

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Managing Member

SWIFTARC VENTURES, LLC, a Texas limited liability company

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Manager

SWIFTARC BEAUTY FUND GP, LLC, a Delaware limited liability company

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Manager

SWIFTARC VENTURE LABS FUND GP, LLC

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Manager

SWIFTARC TELEHEALTH LABS FUND GP, LLC

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Manager

ORDER OF MAGNITUDE VENTURES, LLC

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Managing Member

**FUNDS**

SWIFTARC BEAUTY FUND, LP, a Delaware limited partnership

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Manager of the General Partner

SWIFTARC TELEHEALTH LABS FUND, LP

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Manager of the General Partner

SWIFTARC VENTURE LABS FUND, LP

By: DocuSigned by: Sid Jawahar BB217A15B3AF44B...
Name: Siddharth Jawahar
Title: Manager of the General Partner

[*Signature Pages Continue*]

**INVESTORS**

DocuSigned by:
Fred Goad
90BA4608F3F244C...
FRED GOAD

DocuSigned by:
Frank Krasovec
7CF6A3D868E4401...
FRANK KRASOVEC

DocuSigned by:
Zohar Ziv
5153682C121E4EE...
ZOHAR ZIV

[*Signature Pages Continue*]

**NEW MANAGEMENT**

RELEVANCE CAPITAL MANAGEMENT, LLC,
a Tennessee limited liability company

By: DocuSigned by: Dean Newton EBE99C5BF8F34BA...
Name: Michael D. Newton
Title: Manager

BEAUTY GENERATIONS GP, LLC, a Delaware limited liability company

By: Relevance Capital GP, LLC, its managing-member

By: DocuSigned by: Dean Newton EBE99C5BF8F34BA...
Name: Michael D. Newton
Title: Chairman

[**Exhibit A**]

*Organizational Chart as of Effective Date of Omnibus Agreement*

[*Exhibit A – Organizational Chart as of Effective Date*]

# [**Exhibit A**]

*Organizational Chart as of Effective Date of Omnibus Agreement*



[**Exhibit B**]

*Organizational Chart as of March 8, 2023*

[*Exhibit B – March 8, 2023 Organizational Chart*]

# LEGEND

The following illustrates entity classifications for U.S. federal income tax purposes with respect to entities/persons depicted herein:



Individual(s)

Partnership or LLC treated as a partnership

Disregarded Entity

Qualified Subchapter S Subsidiary

S corporation

C corporation

# LEGEND

## CURRENT OWNERSHIP (MARCH 8, 2023)

